**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                                      :
KAVITHA POLKAMPALLY and                               :
NARASIMHA POLKAMPALLY,                                :
                                                      :
      Plaintiffs,                                  :       Civil No. 13-174 (RBK/JS)
                                                      :
      v.                                           :
                                                      :       **OPINION**
COUNTRYWIDE HOME LOANS INC, et al.,                   :
                                                      :
      Defendants.                                  :
_____               :

**KUGLER**, United States District Judge:

Before the Court are the motions of Defendant Greenpoint Mortgage Funding
(Doc. No. 3), Defendants JPMorgan Chase Bank, N.A. and EMC Mortgage Corporation
(Doc. No. 15), and Defendants Countrywide Home Loans Inc., Countrywide Home
Loans Servicing, LP, and Bank of America, N.A. (Doc. No. 19) to dismiss the complaint
of Kavitha Polkampally and Narasimha Polkampally ("Plaintiffs").  For the reasons set
forth below, these motions will be **GRANTED**.

## I.      FACTUAL BACKGROUND

This matter arises of out of the purchase of two residential properties by Plaintiffs,
who are proceeding pro se in this matter.  On February 4, 2005, Plaintiffs purchased a
residential property located in Jamaica, New York ("the Jamaica property").  Compl. at ¶
19.  In connection with this purchase, Plaintiffs obtained a mortgage loan in the amount
of $730,400.  Id.  The loan was originated by Defendant Greenpoint Mortgage Funding

("Greenpoint"). Id. at ¶ 29. Subsequently, the mortgage was securitized and serviced by EMC Mortgage Corporation ("EMC") and later by JPMorgan Chase Bank, N.A. ("Chase").[1] Id. at ¶ 31, Chase Br. at 2. In January, 2006, Plaintiffs purchased another residential property in Bayonne, New Jersey ("the Bayonne property") and obtained a mortgage loan on that property in the amount of $309,850 from Countrywide Home Loans, Inc. ("CHL"). Compl. at ¶¶ 1-3. This loan was also securitized after closing, and was evidently serviced after securitization by Countrywide Home Loans Servicing, LP ("CHLS") and its successor, Bank of America NA ("BOA").[2] Id. at ¶¶ 8, 12, 45.

Notably, the mortgage instrument for both properties named Mortgage Electronic Registration System ("MERS") as the beneficiary of the deed, as nominee of the respective lenders.[3] Id. at ¶¶ 10, 21. MERS was named conspicuously as the mortgagee in the documents that Plaintiffs signed at closing.[4] Plaintiffs' complaint alleges that MERS is "designed to circumvent certain laws and other legal requirements

---

[1] EMC is evidently a subsidiary of JPMorgan Chase. Compl. at ¶ 32. The two parties filed a joint motion in this matter (Doc. No. 15). They are referred to collectively at times in this Opinion as "the Chase Defendants."

[2] CHL, CHLS and BOA filed a their motion jointly, and will be referred to collectively as "the BOA Defendants."

[3] Although, for the reasons set forth in this Opinion, a detailed discussion of MERS is not necessary, because of its relevance to Plaintiffs' complaint, some background on its role is warranted. MERS was created in 1993 by several large mortgage lenders to streamline the recording of mortgages in local county recording offices. Bank of New York v. Silverberg, 86 A.D.3d 274, 278 (N.Y. App. Div. 2011). Lenders who are members of the MERS system use the system to electronically process and track the ownership and transfer of mortgages. Id. They agree to appoint MERS as their common nominee, or agent, on all mortgages registered with MERS. Id. One of the benefits to lenders from using MERS is the ability to more easily pool mortgages and securitize them, selling them to investors. Id. The beneficial interest in the mortgages can then easily be sold from one party to another without having to register each assignment with local government recording offices, and without having to pay the recording fees associated with such filings. Id. MERS remains the mortgagee of record and holds legal title in the county recording offices when the mortgage is transferred from one holder to another. Id. The role of MERS is strictly as a placeholder of legal title—it does not originate or service mortgages by lending money or receiving loan payments. Id. at 279.

[4] See BOA Mot. Ex. B at p.1 (stating in boldface type that "MERS is the mortgagee under this Security Instrument."); Chase Mot. Ex. A at p.1 (stating, also in boldface, that "for purposes of recording this mortgage, MERS is the mortgagee of record).

dealing with mortgage loans." Id. at ¶ 55.  Plaintiffs also claim that the existence of

MERS constitutes "numerous violations of Unfair and Deceptive Acts and Practices [sic]

due to the conflicting nature and identity of the servicer and the beneficiary." Id. at ¶ 62.

They also claim that the original note to the Bayonne property has been lost. Id. at ¶ 80.

Plaintiffs filed this suit, appearing to take the position that various defendants violated

federal laws, committed fraud and other tortious conduct, and cannot enforce the

mortgages because the assignments are invalid. Id. at ¶¶ 76, 86, 94-95.  According to the

BOA defendants, Plaintiffs have not made any payments on the mortgage on the Bayonne

property in over two years.  BOA Br. at 2.  However, the Court does not note any

indication that foreclosure proceedings have been initiated against the Bayonne property.

It is unclear from the complaint and moving papers whether Plaintiffs are in arrears on

their loan on the Jamaica property, but there similarly is no indication that the property is

in foreclosure.  Plaintiffs ask the Court for a declaratory judgment voiding, rescinding or

reforming the mortgages and finding that the loans are unenforceable.  Plaintiffs also seek

a judgment for actual damages, treble damages, costs and attorney's fees.  Compl. at p. 9,

12.

    All defendants have moved to dismiss the complaint.  Each defendant argues that

Plaintiffs' complaint fails to plead sufficient facts to state a claim, and also that the claims

are time-barred.  Greenpoint additionally seeks dismissal on the ground that Plaintiffs

have failed to join an indispensable party.  The BOA Defendants further urge that the

complaint should be dismissed because they have never been served with process.

## II.     LEGAL STANDARD

### A. Choice of law

Plaintiffs' complaint involves claims related to the purchase of two separate properties. It does not appear as though any individual defendant is connected to both properties. Although Plaintiffs seek to hold the defendants liable under some of the same legal theories, there are evidently no underlying facts that relate to both the Bayonne property and the Jamaica property. Therefore, the same body of law need not apply to both claims. In such a situation, "different states' laws may apply to different issues in a single case." Berg Chilling Sys. Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006). Because a number of state law claims are asserted in the complaint, the Court will consider the issue of which state's law applies to these claims.

The BOA Defendants do not address the issue of choice-of-law, but assume that New Jersey law applies to the dispute related to the Bayonne loan. See BOA Br. at 5. The Court agrees, observing that the property is located in New Jersey, the loan originated in New Jersey, and Plaintiffs are evidently citizens of New Jersey. The Chase Defendants state that New York law should apply to the allegations related to the Jamaica property, because that property is located in New York and the loan originated in New York. Chase Br. at 3. The Greenpoint Defendants appear to assume, without addressing the issue, that New Jersey law applies to the dispute over the Jamaica property's mortgage. See, e.g., Greenpoint Br. at 5. Plaintiffs seem to make the same assumption as Greenpoint. Pl. Opp'n (Doc. No. 17) at 5-6.[5] Further, although statute of limitations issues are present in the motions, and different parties apply different statutes of limitations to the same claims, none of the parties address whether the New Jersey or

---

[5] The Court does note that Plaintiffs mention the New York Consumer Fraud act in their complaint. Compl. at ¶ 103.

New York statute of limitations framework applies.  See, e.g., Greenpoint Br. at 7

(arguing for dismissal of all state-law claims related to the Jamaica property based upon

New Jersey's six-year general statute of limitations); Chase Br. at 7 (arguing for

dismissal of some of the same state-law claims based upon New York's three-year statute

of limitations for statutory causes of action).  It is therefore necessary for the Court to

determine which state's substantive law and statute of limitations framework applies.

When jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332,

federal district courts must apply the choice-of-law principles of the forum state.

Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007).  The same principle applies

when a district court adjudicates a state law claim under the court's supplemental

jurisdiction pursuant to 28 U.S.C. § 1367.  See Gluck v. Unisys Corp., 960 F.2d 1168,

1179 n.8 (3d Cir. 1992); Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 857 (D.C.

Cir. 2006).  Because in this case, federal jurisdiction over Plaintiff's state law claims is

grounded in supplemental jurisdiction,[6] this Court must apply the choice-of-law

principles of the forum state of New Jersey to determine what body of law applies to the

state law claims.  In so doing, the Court must look to the decisions of the highest state

court.  Edwards v. HOVENSA, LLC, 497 F.3d 355, 361 (3d Cir. 2007).

---

[6] In this case, although Plaintiffs allege jurisdiction based on both diversity of citizenship and the existence of a question of federal law, the Court observes that Plaintiffs did not make averments as to the citizenship of any party in their complaint. Compl. at p.2, 5. For the purposes of diversity jurisdiction, the citizenship of each party must be alleged specifically. Hodgson v. Bowerbank, 9 U.S. 303, 304 (1809). "Mere residency in a state is insufficient for purposes of diversity." Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d Cir. 1972). Because Plaintiffs have not properly alleged diversity jurisdiction, the court's subject matter jurisdiction here is based upon Plaintiffs' claims under federal law, and the Court's supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367.

When resolving conflict issues arising from tort claims, New Jersey law is generally informed by the Restatement (Second) of Conflicts of Law. ("Restatement"). See P.V. v. Camp Jaycee, 197 N.J. 132, 136 (2008); Instructional Systems, Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341-42 (1992). According to the Restatement, in an action for fraud or misrepresentation, when a defendant's misrepresentations and a plaintiff's receipt of and reliance on them took place in the same state, that state's law will govern unless another state has a more significant relationship to the occurrence and the parties. Restatement § 148(1). If another state has a "more significant relationship," that state's laws will apply. Id. Negligent misrepresentation claims are also governed by Restatement § 148. See Nafar v. Hollywood Tanning Sys., Inc., 339 Fed. Appx. 216, 220 (3d Cir. 2009). New Jersey Courts have cited § 148 with approval. See Beegal v. Park West Gallery, 394 N.J. Super. 98, 122 (App. Div. 2007).

Following this framework, with respect to the Jamaica property, the Court concludes that New York's substantive law applies to the state law claims. The alleged fraud and misrepresentations took place in New York, and Plaintiffs were evidently in New York when they allegedly relied on them. See Chase Mot. Ex. A. Although Plaintiffs apparently reside in New Jersey at the present time, Plaintiffs have not alleged any substantial events that took place there as the basis for their claims.[7] Therefore, the Court does not observe any basis for New Jersey or any other state to have a "more significant relationship" to the alleged tortious conduct by the defendants in connection with the Jamaica property.

---

[7] The assignment for the Jamaica property evidently was executed in Florida. Chase Mot. Ex. B. However, this alone does not constitute a relationship of significance with Florida.

Because statute of limitation defenses are present in this dispute, it is also necessary to discuss New Jersey's choice-of-law approach to statutes of limitations. As with the determination as to substantive law, a district court applying state law is obligated to use New Jersey choice-of-law rules to determine what statute of limitations is applicable. Mack Trucks, Inc. v. Bendix-Westinghouse Auto. Air Brake Co., 372 F.2d 18, 20 (3d Cir. 1966). The statute of limitations is "ordinarily a matter of procedure . . . and is therefore, like other procedural attributes, controlled by the law of the forum rather than the law of the state whose law otherwise governs the cause of action." Heavner v. Uniroyal, Inc., 63 N.J. 130, 135 (1973). Therefore, although another state's substantive law might apply, the general rule in a New Jersey forum is that New Jersey's statute of limitations will apply. Id. The exception would be when New Jersey has no substantial interest in the matter, in which case the statute of limitations of the foreign state applies. Pine v. Eli Lilly & Co., 201 N.J. Super 186, 191 (App. Div. 1985) (citing Heavner, 63 N.J. at 140-41). However, when the plaintiff in an action is a New Jersey domiciliary at the time of the filing of the action, New Jersey has a sufficient state governmental interest to apply its own statute of limitations. Id. at 193. Because Plaintiffs appear to have been domiciled in New Jersey at the time this action was filed, New Jersey has a substantial interest in the matter, and thus the statute of limitations laws of the forum state of New Jersey will apply, even though New York's substantive law applies to the issues surrounding the Jamaica property.

**B. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to

dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 131 (quoting Iqbal, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

When a plaintiff is not represented by counsel, courts should construe the complaint liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520 (1972). Such a pro se complaint should only be dismissed for failure to state a claim if "it appears

'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

### C. Leave to Amend

Where a complaint is dismissed for failure to state a claim, leave to amend should normally be granted. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). However, the rule is not absolute; leave to amend is inappropriate where it would cause undue delay, the amendment is motivated by bad faith or a dilatory motive, the amendment would cause prejudice, or the amendment is futile. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In assessing "futility," the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." Id. (citations omitted).

Leave to amend is rarely applied sua sponte. Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007). In Fletcher-Harlee, the Third Circuit held that "in ordinary civil litigation it is hardly error for a district court to enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint." Id. at 253 (stating that the court "rarely applied the sua sponte amendment rule outside of the context of a civil rights case . . . In non-civil rights cases, the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint.")

### III.    DISCUSSION

#### A.  Service of Process

Under Federal Rule of Civil Procedure 4, if a defendant is not served within 120 days after the complaint is filed, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If a plaintiff shows "good cause" for the failure to timely serve, the court "must extend" the time for service. Id. Even if good cause does not exist, the court may consider whether to grant a discretionary extension of time. Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995). Among the factors a district court should consider in deciding whether to extend time for service in the absence of good cause are whether the refiled action would be barred by the statute of limitations or if the defendant has evaded service or is concealing a defect in attempted service. Id. at 1305-06. If service is put in issue by a defendant, a plaintiff has "the burden of proving proper service" or explaining the lack thereof. Rivera Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992); see also Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993).

Here, the BOA Defendants indicated that they were not served with the complaint within the 120-day time period, and in fact have never been served. BOA Br. at 1. The Court is unaware of any request by Plaintiffs for an extension of time for service. Plaintiffs have not made any allegation that the BOA Defendants were served, nor have they explained in their brief why service was not effectuated. Plaintiffs have thus provided no basis for the Court to determine that the BOA Defendants were not served for "good cause." Similarly, the Court observes no basis for a discretionary extension of

time.[8]  Plaintiffs have not met their burden of proving proper service or explaining why the BOA Defendants were not served.  Although the Court recognizes that Plaintiffs are not represented by counsel, the BOA Defendants clearly stated the reasons for their objection based on lack of service in their moving papers, and Plaintiffs failed to respond in any manner whatsoever.  BOA Br. at 2-3.  The Court cannot excuse the requirement of service of process because a party proceeds pro se.  See Cain v. Abraxas, 209 Fed. Appx. 94, 96 (3d Cir. 2006).  The complaint against the BOA Defendants will be therefore dismissed without prejudice under Rule 12(b)(5).  As a result, it is unnecessary to discuss the other arguments for dismissal that the BOA Defendants advance.

## B.  Statute of Limitations Defenses

Greenpoint and the Chase Defendants ask the Court to dismiss Plaintiff's complaint, arguing that Plaintiffs' claims are time-barred by the relevant statutes of limitations.  Greenpoint indicates that it originated the loan on the Jamaica property, and sold the loan approximately eight years ago.  Greenpoint Br. at 2.  Chase argues that Plaintiffs' claims relate to the loan origination and securitization, both of which took place in 2005, and that the relevant statutes of limitations have since expired.  Chase Br. at 2.  Plaintiffs respond that the claims are not time-barred due to the discovery rule, the doctrine of equitable tolling, and because they were harmed by continuing conduct by the defendants.

---

[8] For example, there is no indication that the BOA defendants have evaded service.  For the reasons discussed in Part III.B of this Opinion, the Court is unable to determine whether the refiled action would be barred by any relevant statute of limitations.  As explained in this Opinion, certain counts of the complaint are barred by the statute of limitations.  Other counts are not pleaded with sufficient detail to determine when Plaintiffs' causes of action arose.

Although a plaintiff need not plead that his or her claim has been timely filed, "if the allegations of a complaint show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." Cope v. Kohler, 2013 WL 812130, at *3 (D.N.J. Mar. 4, 2013) (internal quotations omitted). Therefore, the Court will analyze Plaintiffs' claims in connection with the relevant time limits for filing each of their claims.

    1.  Federal Law Claims

Plaintiff's first count is a claim under federal law for alleged violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA").[9] TILA "requires lenders to make certain disclosures to borrowers and gives borrowers a civil cause of action against creditors who violate these disclosure provisions." Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 500 (3d Cir. 1998). Claims under TILA are subject to a one-year statute of limitations. 15 U.S.C. § 1640(e). The statute of limitations is subject to equitable tolling in certain situations where a defendant has fraudulently concealed the facts underlying a TILA violation. Ramadan, 156 F.3d at 505. A right to rescind a loan agreement under 15 U.S.C. § 1635(f) is also subject to a three-year statute of repose, which is not subject to equitable tolling. In re Cmty. Bank of N. Va., 622 F.3d 275, 301 n.18 (3d Cir. 2010); see also Jones v. Saxon Mortgage, Inc., 537 F.3d 320, 327 (4th Cir. 1998).[10] The United

---

[9] The first page of Plaintiffs' complaint also states that the complaint is for violations of the "Fair Debt Collection Act." Compl. at p.1. However, there is no count in the complaint actually alleging any violation of federal law aside from the TILA claim discussed in this section. Reading the complaint in the light most favorable to Plaintiffs, the Court finds no allegations of any abusive debt collection practices, and therefore this issue is not taken up in this Opinion.

[10] This assumes for the sake of argument that Greenpoint was required to provide notice of the right to rescind the mortgage. Under 15 U.S.C. § 1635(e), the right of rescission does not apply, and need not be disclosed, when the transaction is "a residential mortgage transaction as defined in section 1602(w) of this title." Section 1602, in turn, defines a "residential mortgage transaction" as one where the mortgage finances the acquisition or initial construction of the consumer's dwelling. 15 U.S.C. § 1602(w)-(x). As

States Supreme Court has held that TILA "permits no federal right to rescind . . . after the 3-year period of § 1635(f) has run." Beach v. Ocwen Federal Bank, 523 U.S. 410, 419 (1998). The TILA claims asserted by Plaintiffs appear to be related to "disclosures" that Plaintiffs believe were missing from "the assigned documents." Compl. at ¶¶ 98-99. The Court finds no plausible allegation of a TILA violation other than in connection with the mortgage origination on February 4, 2005. Therefore, Plaintiffs' argument that a "continuing violation" took place cannot apply to the TILA claims. Pl. Opp'n at 5. Courts have rejected the idea that a discovery rule applies to a TILA violation that causes the claim to accrue whenever the alleged violation is discovered. See, e.g., McAnaney v. Astoria Fin. Corp., 2008 WL 222524 at *5 (E.D.N.Y. 2005). Further, even if the equitable tolling doctrine or a discovery rule were to apply to Plaintiffs' claims with respect to the one-year statute of limitations, the TILA claims would still be time-barred by the three-year statute of repose. Therefore, Plaintiffs' count for TILA violations must be dismissed.

    2.  State law claims

    Plaintiff's complaint also asserts violations of New York and New Jersey Consumer Fraud laws, common law fraud, negligent misrepresentations, and breach of fiduciary duties. Because the claims related to the Bayonne property asserted against the

---

discussed earlier, the acquisitions of the two properties were financed by the two mortgages at issue here. While it is not clear whether Plaintiffs actually used the Jamaica property as their own principal dwelling, Plaintiffs agreed to do so pursuant to the mortgage contract. The mortgage note that Plaintiff Kavitha Polkampally signed indicates that "I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property as my principal residence for at least one year." Chase Mot. Ex A, p. 8 of 17, ¶ 6. Plaintiffs' mortgage note for the Bayonne property contained a similar agreement. BOA Mot. Ex. A. p. 5 of 10, ¶ 6. Thus, while the Court does not decide the motion on this ground, it appears that because the property transactions may have both been "residential mortgage transactions," the right to rescind would not have needed to be disclosed under TILA, which is the only claim Plaintiffs make under TILA.

BOA Defendants are dismissed for the reasons stated in Part III.A, only the state law claims related to the Jamaica property against Greenpoint and the Chase defendants warrant discussion.  Although the Court believes that New York substantive law would apply to these claims, the Court analyzes the statute of limitations issues under the law of the forum state, New Jersey for the reasons discussed in Part II.A.

Defendants essentially argue that all of the alleged conduct by the defendants relates to the origination and securitization of the loan, which took place in 2005, nearly eight years before the filing of this action.  If the events giving rise to this action took place in 2005, Plaintiffs' claims would be time-barred by New Jersey's general six-year statute of limitations.  N.J.S.A. § 2A:14-1.  See also Mirra v. Holland Am. Line, 331 N.J. Super. 86, 90 (App. Div. 2000).  Plaintiffs argue that the claims are not time-barred because of the application of the discovery rule.  They state that "these facts were brought to their attention just recently by [a] Securitization Audit" that Plaintiffs evidently hired someone to conduct.  Pl. Opp'n (Doc. No. 17) at 5-6.  Therefore, they advance the argument that the claims arose when they discovered the allegedly tortious conduct.  Plaintiffs also argue that equitable tolling applies, and characterize the allegedly tortious conduct as "a continuing violation."  Id.  Each of these potential defenses to the application of the statute of limitation is considered in turn.

a.. The Discovery Rule

The discovery rule argument advanced by Plaintiffs fails, at least to the extent that they seek to apply it to the loan origination documents because they did not "discover" the alleged wrongful conduct until later.  A cause of action arises when a plaintiff knows or should know of its existence.  Plaintiffs correctly observe that the discovery rule

delays the accrual of a cause of action until a "plaintiff discovers, or by exercise of reasonable diligence and intelligence should have discovered, facts that form the basis of a cause of action." Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 337 (2010) (internal citation omitted). However, "the discovery rule imposes on plaintiffs an affirmative duty to use reasonable diligence to investigate a potential cause of action." County of Morris v. Fauver, 153 N.J. 80, 110 (1998). As a result, "the discovery rule generally does not apply to contract actions." Id. Although this is not, strictly speaking, an action for breach of contract, the same principle applies. Any claims related to deficiencies in the loan origination documents involve "a contract with clear and explicit" provisions. Id. The facts underlying this action thus could have reasonably been discovered in 2005 by examining the documents. For example, Plaintiffs allege that the defendants wrongfully used MERS as the legal holder of the mortgage. Compl. at ¶¶ 50-58. The existence of MERS as the holder of the mortgage was indicated in bold type on the mortgage note for the Jamaica property, which was signed on February 4, 2005, and could have been ascertained at that time. Id. at ¶19. The discovery rule only delays the accrual of a cause of action if facts are not discovered or able to be discovered until a later time. The possibility that Plaintiffs were informed at a later time that certain disclosures made at the time of the loan origination may have been legally insufficient is not the discovery of facts. It is the receipt of a legal opinion, and does not trigger the discovery rule.

    b. Equitable Tolling

    New Jersey law recognizes the doctrine of equitable tolling, which in effect pauses the running of the statute of limitations. That state's courts have found it to apply

in three situations.  First, tolling may be appropriate where a plaintiff has been "induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Villalobos v. Fava, 342 N.J. Super. 38, 50 (App. Div. 2001).  Second, the doctrine may apply where a plaintiff has been prevented "in some extraordinary way" from asserting his rights.  Third, equitable tolling applies where the plaintiff has "timely asserted his rights mistakenly by either defective pleading or in the wrong forum."  Freeman v. State, 347 N.J. Super. 11 (App. Div. 2002). The standards for equitable tolling as a matter of federal law in the Third Circuit are virtually identical. See Lake v. Arnold, 232 F.3d 360, 370 n.9 (3d Cir. 2000). Equitable tolling does not apply in this case, based upon the allegations presented by Plaintiffs.  Plaintiffs have not identified facts resembling any of the factors that would invoke equitable tolling.

     c. Continuing Conduct

The Plaintiffs also allude to the continuing tort doctrine.  This doctrine applies when there is "a continual, cumulative pattern of tortious conduct." Wilson v. Wal-Mart Stores, 158 N.J. 263, 272 (1999).  Although Plaintiffs have not clearly pleaded any conduct that has occurred within the statute of limitations, the Court, recognizing that Plaintiffs are proceeding pro se, is especially careful in searching for any facts within the complaint that might infer a viable claim.  The Court observes that Plaintiffs allege that certain unspecified defendants have collected more interest that the note allows for, that payments made by Plaintiffs have not been accounted for, and that excess fees were charged by some defendants that were not permitted by the mortgage note.  Compl. at ¶¶ 88-90.  Although Plaintiffs do not indicate the date that these events allegedly took place, these would probably not have been acts that occurred at the time of the loan origination.

Construing these allegations in Plaintiffs' favor, the Court will assume that some of this alleged conduct took place recently enough to fall within the statute of limitations period.[11] Thus, for the state law claims against the Chase and Greenpoint defendants, the Court will move on to analyze the additional arguments for dismissal made by those defendants.

### C. Adequacy of State Law Claims

The Greenpoint and Chase Defendants move to dismiss the state law claims for consumer fraud, common law fraud, negligent misrepresentation, and breach of fiduciary duty, arguing that Plaintiffs have not adequately pled these claims. For the reasons described above, the Court analyzes the substantive requirements for these causes of action under New York Law.

#### 1. Consumer Fraud

The Court presumes that Plaintiffs, by invoking "the New York Consumer Fraud Act," Compl. at ¶ 103, seek to hold the defendants liable under New York's consumer protection statute, General Business Law § 349.[12] This statute states that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law §349(a). A plaintiff in a suit under § 349 must prove three elements: (1) the defendant's act or practice was "consumer-oriented"; (2) it was materially misleading; and (3) the plaintiff

---

[11] As explained in the next part, the complaint is dismissed without prejudice on other grounds. If Plaintiffs seek leave to amend their complaint, the Court directs them to plead specifically as to when the allegedly tortious conduct took place.

[12] For the reasons described earlier, the analogous New Jersey statute, N.J.S.A. § 56:8-2, would not apply to the dispute surrounding the Jamaica property.

suffered injury as a result of the deceptive act.  <u>Stutman v. Chemical Bank</u>, 95 N.Y.2d 24, 29 (2000).

For the reasons expressed in Part III.B.2 of this Opinion, the Court does not examine the events surrounding the origination of the loan because any events that took place at that time would be time-barred.  Plaintiffs have not produced any "well-pleaded factual allegations" satisfying the elements of § 349.  <u>Iqbal</u>, 556 U.S. at 680.  Plaintiffs have broadly alleged that fees and interest were charged improperly and that some unspecified defendants did not properly account for their loan payments.  However, they have not described these allegedly fraudulent transactions with any specificity at all.  Even drawing every inference in Plaintiffs' favor, the Court cannot conclude that Plaintiffs have described any conduct that is deceptive or materially misleading.  They have not indicated which defendants engaged in the conduct, when it took place, which property the conduct relates to, or the extent of the damages suffered.  Plaintiffs have similarly not made any showing as to why the assignment or securitization of their mortgage, to the extent that these events may have occurred within the statute of limitations, was deceptive or misleading.  Courts have rejected the argument that assigning or securitizing a mortgage alone constitutes improper conduct by a lender.  <u>See Saxon Mortg. Servs., Inc. v. Coakley</u>, 83 A.D.3d 1038, 1038-39 (N.Y. App. Div. 2011); <u>Haskins v. Moynihan</u>, 2010 U.S. Dist. LEXIS 76922, at *4-6 (D. Ariz. July 6, 2010).

Plaintiffs have directed the Court to a case that held that an assignee of MERS lacked standing to commence a foreclosure action.  <u>Bank of New York v. Silverberg</u>, 86 A.D.3d 274, 278 (N.Y. App. Div. 2011).  The holding in that case is not instructive for the purposes of Plaintiffs' complaint here, because even if the homeowners in that case

are similarly situated to Plaintiffs, <u>Silverberg</u> does not support a finding of fraud or other

tortious conduct against the financial institutions.  This case is not a foreclosure action,

and to the Court's knowledge neither of Plaintiffs' properties involved in this action has

been foreclosed upon.  In deciding this motion, the Court need not, and does not, decide

whether any of the defendants would be successful in a foreclosure action, or even

whether the notes secured by the mortgages are enforceable.  The motions before the

Court relate to the adequacy of Plaintiffs' allegations of violations of federal law, fraud,

and other tortious conduct on the part of the defendants in this matter.  For the reasons

discussed, Plaintiffs have not set forth sufficient allegations to state a claim for statutory

consumer fraud under New York law.

2. Common Law Fraud

The elements of common law fraud are: (1) a material misrepresentation of fact

by the defendant; (2) knowledge of its falsity by defendant; (3) the defendant intended

that the plaintiff rely upon the misrepresentation; (4) reliance by the plaintiff upon the

misrepresentation; and (5) damages suffered by the plaintiff as a result of the reliance.

<u>MBIA Ins. Corp. v. Countrywide Home Loans, Inc.</u>, 87 A.D.3d 287, 294 (1st Dept. N.Y.

2011).  Although factual allegations are required when pleading any claim, when a

plaintiff alleges fraud, the standard is even higher.  When fraudulent conduct is alleged,

the complaint must state the circumstances constituting the fraud "with particularity."

Fed. R. Civ. P. 9(b).  The Chase Defendants cite a number of cases where New York

courts dismissed fraud claims because of a lack of particular allegations.  Chase Br. at 14.

It is not necessary to discuss these cases here because Plaintiffs so obviously fail to allege

the elements of a fraud claim with any particularity.  Plaintiffs merely make general

allegations such as that the defendants have created "bogus entities." Compl. at ¶ 106. They make other broad allegations such as the charge that unspecified defendants have charged excessive interest and fees and failed to account for payments made by Plaintiffs. Compl. at ¶¶ 88-90. However, Plaintiffs do not identify any specific misrepresentations, which defendant or defendants made the misrepresentations, or which of the two properties the misrepresentations relate to. Nor do Plaintiffs identify the dates and amount of payments that were allegedly made by Plaintiffs but not accounted for, or the amounts of the allegedly excessive interest or fees and the provisions in the mortgage notes that prohibit such charges. For these reasons, and those stated in the previous section on statutory consumer fraud, this count will be dismissed. In analyzing each of Plaintiffs' claims, the Court has made every attempt to liberally construe the complaint, recognizing that it was filed without the assistance of an attorney. Haines, 404 U.S. at 520. However, the Court has found "no set of facts in support of [their] claim which would entitle [them] to relief." Id.

3. Negligent Misrepresentation

In New York, common law liability for negligent misrepresentation exists only against "those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." Kimmell v. Schaefer, 652 N.Y.S.2d 715, 719 (1996). A "special relationship" of such confidence may exist, for example, between professionals such as attorneys or engineers and their clients. Id. Plaintiffs have not alleged that such a "special relationship" exists that would permit them to assert a negligent misrepresentation claim. In fact, it appears that no such relationship exists, as

under New York law, the "bank-borrower relationship" is not a "special relationship" that may give rise to a negligent misrepresentation claim. <u>Korea First Bank of New York v. Noah Enters.</u>, 78 N.Y.S.2d 2, 4 (N.Y. App. Div. 2004). Therefore, the claims for negligent misrepresentation will be dismissed.

    4.        Breach of Fiduciary Duties

Plaintiffs must demonstrate that a fiduciary duty exists in order to bring a claim for breach of fiduciary duty. <u>See</u> <u>EBC I, Inc. v. Goldman, Sachs & Co.</u>, 799 N.Y.S.2d 170, 175 (2005). Plaintiffs have not made such a showing. A creditor-debtor relationship ordinarily does not create a fiduciary duty on the lender's part. <u>See</u> <u>Nathan v. J & I Enters., LTD</u>, 622 N.Y.S.2d 798 (N.Y. App. Div. 1995); <u>Korea First Bank</u>, 78 N.Y.S.2d at 4. This claim will therefore also be dismissed.

**D.  Failure to Join an Indispensable Party**

Greenpoint also argues that the complaint should be dismissed under Fed. R. Civ. P. 12(b)(7). Greenpoint Br. at 3. They argue that the owner of the loan on the Jamaica property is not a party to this complaint. <u>See</u> Greenpoint Reply at 2, Chase Mot. Ex. B. It appears that Chase is the current servicer of the Jamaica mortgage and may be the trustee of the trust that currently owns the loan. Chase Mot. Ex. B. For this reason, and because the motions will be granted on other grounds, the Court declines to dismiss on this basis.

**IV.     CONCLUSION**

For the foregoing reasons, all motions to dismiss are **GRANTED**. The claims against the BOA Defendants are dismissed pursuant to Fed. R. Civ. P. 12(b)(5). The

claims against the Greenpoint and Chase Defendants are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

For the reasons discussed herein, Count One, alleging violations of TILA, will be dismissed with prejudice because the Court finds that it would be futile to attempt to cure the defect of the claims being time-barred. The remainder of the complaint is dismissed without prejudice to Plaintiffs' filing of an amended complaint to cure the factual and legal deficiencies of this action as noted herein. Plaintiff may therefore request, within the requisite time period stated in the Order, leave to amend Counts Two, Three, Four and Five of the complaint to allege sufficient specificity.[13]

Dated: ___11/6/2013___                              ___/s/ Robert B. Kugler_____
                                                    ROBERT B. KUGLER
                                                    United States District Judge

---

[13] Should Plaintiffs seek leave to amend their complaint and re-file it invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332, the Court directs Plaintiffs to take note of footnote 6 of this Opinion, and to properly allege the citizenship of each party to the action in the amended complaint.